

**IT IS ORDERED as set forth below:**

**Date: April 10, 2017**

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| Steven C. Smith, | ) | Case No. 10-89420-PWB |
| Debtor. | ) | |
| | ) | |
| | ) | |
| BKGD, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary Proceeding No. 16-05253-PWB |
| | ) | |
| Clay Martin Townsend, Good Gateway, | ) | |
| LLC, and SEG Gateway, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

This matter comes before the Court on the Defendants' Motion to Dismiss Amended

Complaint, to Abstain, or to Stay, with Supporting Memorandum of Law [AP Doc. 8[1]] and the

---

[1] Citations to "AP Doc." are to documents in the adversary proceeding. Citations to "Doc." are to documents in the main case, No. 10-89420.

Plaintiff's Motion for Summary Judgment as to Count I of the Amended Complaint [AP Doc. 11]. For the reasons given below, the Court will abstain from deciding Counts 2, 3, and 4 of the Amended Complaint. As to Count 1, the Court will hold a status conference at 10:00 o'clock a.m. on April 25, 2017.

## I.      STATEMENT OF FACTS AND ISSUE

Behind the entities involved in this proceeding and related lawsuits are the same handfuls of controlling individuals.

On one side are Carson Good and his entities, including Good Gateway, LLC ("Good Gateway"), and SEG Gateway, LLC ("SEG") (the "Good Entities"). Good Gateway and SEG are defendants in this proceeding; the other defendant, Clay Martin Townsend, is an attorney who represented them in litigation described later.

On the other side are Chittranjan Thakkar ("Mr. Thakkar"), his sons Niloy Thakkar and Rohan Thakkar, and various entities controlled by one or more of the Thakkars (the "Thakkar Entities"). BKGD, LLC ("BKGD"), the plaintiff in this proceeding, is a Thakkar Entity, but it was not organized until December 2015 and was not a party to the previous litigation.

As discussed below, the Good Entities have been engaged in complex business litigation in other courts since late 2009 with various Thakkar Entities arising out of transactions in which Steven Smith, the debtor in a Chapter 7 case in this Court, and entities he controlled, were also involved.

Specifically, Mr. Smith at one point was the sole member of Orlando Gateway, LLC ("Orlando Gateway"). Orlando Gateway, in turn, was one of the members of SEG; the other was Mr. Good's entity, Good Gateway.

An issue in the litigation in other courts has been the disposition of Orlando Gateway's interest in SEG. BKDG presents the same issue here. The Court first provides a summary of the issue and then discusses the facts, prior litigation, and proceedings in this Court in more detail.

**A.  Summary of the issue**

At some point, Mr. Smith caused Orlando Gateway to transfer its interest in SEG to Good Gateway, thereby making Good Gateway the owner of all of the interests in SEG and putting Mr. Good in complete control of SEG by virtue of his control of Good Gateway. The parties dispute whether the transfer occurred before or after the filing of Mr. Smith's Chapter 7 case.  Mr. Smith's bankruptcy case was closed without administration of any ownership interest in Orlando Gateway he might have had.

Based on this acquisition of Orlando Gateway's interests in SEG, Good Gateway as SEG's sole member caused SEG to assert claims against Mr. Thakkar and several Thakkar Entities. The claims were tried after the closing of Mr. Smith's bankruptcy case, and SEG obtained a multi-million dollar judgment in Florida state court. That judgment is currently on appeal in Florida.

In the Florida trial court, the Thakkar Entities had asserted that SEG lacked standing to assert its claims on the ground that Good Gateway did not control SEG because Good Gateway had not validly and legally acquired Orlando Gateway's interest in SEG.  They challenged the transfer of Orlando Gateway's interest to Good Gateway on the grounds that the transfer occurred after the bankruptcy filing; that the bankruptcy filing put Orlando Gateway under the control of Mr. Smith's Chapter 7 trustee; that Mr. Smith thus had no authority to act on behalf of Orlando Gateway to transfer its interest in SEG to Good Gateway; and that the transfer was illegal and void because it violated the automatic stay of 11 U.S.C. § 362(a).  Furthermore, they asserted that, because Mr. Smith did not list his interest in Orlando Gateway on his bankruptcy schedules, his interest remained property of the Chapter 7 estate after the closing of his case under 11 U.S.C. § 554(d).

The Florida trial court rejected this argument for reasons discussed in Part I(B), and the issue is now pending on appeal.

Mr. Smith's interest in Orlando Gateway became the subject of proceedings in this Court when the Court reopened his Chapter 7 case to permit administration of his interest as an asset of

3

his estate.  The plaintiff, BKGD – a Florida limited liability company organized in December 2015 – purchased whatever interest Mr. Smith had in Orlando Gateway.  Because the Chapter 7 trustee quitclaimed the estate's interest to BKGD, the estate has no interest in this proceeding, and the trustee is not a party.

BKGD now contends that it is the owner of all of the membership interests in Orlando Gateway and that Orlando Gateway owns the interest in SEG that Mr. Smith caused Orlando Gateway to transfer to Good Gateway.  In this adversary proceeding, BKGD seeks declaratory judgments that BKGD owns Orlando Gateway and that Good Gateway has no authority to control Orlando Gateway or SEG.  BKDG supports its claims with the same legal theories that the Thakker Entities advanced in the Florida trial court, which that court rejected.

The Court now turns to a discussion in more detail of the history of the litigation over this issue and how that litigation gives rise to the claims BKGD asserts in this proceeding.

### B.  The Florida Litigation

In 2007, Steven Smith and Carson Good became business partners for a multi-use development project near Orlando International Airport (the "Project"). They operated the Project through several limited liability companies, including Orlando Gateway (100% owned by Mr. Smith); Good Gateway (100% owned by Carson Good); and Orlando Gateway Partners, LLC ("OGP"). Good Gateway and Orlando Gateway operated through OGP, which is the entity that   acquired and developed real estate for the Project. Two things eventually occurred: (1) Orlando Gateway and Good Gateway formed and became co-members of SEG, whose purpose was to hold their membership interests in OGP; and (2) Niloy & Rohan, LLC ("N & R"), a Thakkar Entity, invested in the Project and became a co-member of OGP with SEG.

The structure and interests in the Project became as follows. OGP had two members: SEG and N & R. SEG was 83.378% owned by Orlando Gateway and 13.622% owned by Good Gateway.

After a series of complicated events and dealings between the parties, Good Gateway filed a lawsuit in July 2010 in Orange County, Florida (the "Florida Litigation"), against Mr.

Smith, Orlando Gateway, SEG, OGP, Chittranjan Thakkar, N & R, and several other Thakkar Entities, including Nilhan Hospitality, LLC ("Nilhan Hospitality"), Nilhan Financial, LLC, Southeast Investment Properties, LLC, and NCT Systems, Inc. Good Gateway alleged that Mr. Smith, Mr. Thakkar, N & R, and the other Thakkar Entities conspired to cause OGP to transfer valuable real estate to Nilhan Hospitality for little or no consideration. Good Gateway further alleged that Mr. Smith, without Good Gateway's consent, caused SEG to assign all of SEG's interest in OGP to N & R. The Florida Litigation included causes of action for breach of operating agreement, breach of the covenant of good faith and fair dealing, breach of fiduciary duties, tortious interference, civil conspiracy, conversion, fraud, and rescission.[2]

On October 2, 2010, Mr. Smith filed a Chapter 7 petition in this Court. Mr. Smith's schedule of personal property did not include any interest in Orlando Gateway or any other entity.

In June 2011, Good Gateway obtained a $7,686,108.38 judgment against Orlando Gateway and SEG. At some point, purportedly in partial settlement of Good Gateway's claims, Mr. Smith caused Orlando Gateway to transfer its interest in SEG to Good Gateway. The apparent result was Good Gateway's 100% ownership of SEG.  The timing and validity of the transfer are disputed.

In July 2012, SEG (now controlled by Good Gateway) filed cross-claims against Mr. Thakkar, OGP, N & R, and several other Thakkar Entities for breach of fiduciary duty, tortious interference, civil conspiracy, conversion, constructive fraud, and breach of contract.

In July 2014, a jury returned $12 million and $2.5 million verdicts in favor of, respectively, SEG and Good Gateway and against Mr. Thakkar, OGP, N & R, Nilhan

---

[2] The full case name of the Florida Litigation is *Good Gateway, LLC v. Orlando Gateway Partners, LLC, Nilhan Hospitality, LLC, Niloy & Rohan, LLC, Orlando Gateway, LLC, Steven C. Smith, Chittranjan K. Thakkar, Nilhan Financial, LLC, South-east Investment Properties, LLC, and SEG Gateway, LLC*, No. 2010-CA-015315-O, Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida.

Good Gateway initially filed suit in December 2009 with a co-plaintiff, Good Capital Group, Inc. The 2010 lawsuit bifurcated the claims of those two plaintiffs, leaving Good Gateway as the sole plaintiff in the 2010 case.

Hospitality, and NCT Systems, Inc., for breach of fiduciary duty, tortious interference, civil conspiracy, conversion, and constructive fraud. Additionally the jury returned a $12 million judgment in favor of SEG and against OGP and N & R for breach of contract, with an additional award of $3,376,435.58 for prejudgment interest.

In August 2014, the Florida Litigation defendants moved for a directed verdict as to all of SEG's cross-claims, arguing that SEG lacked standing to sue. The defendants argued, apparently for the first time in the suit, that Mr. Smith's Chapter 7 bankruptcy filing placed Orlando Gateway under control of the Chapter 7 trustee and that Mr. Smith was not authorized to cause Orlando Gateway to transfer its interest in SEG. Furthermore, they argued, because the interest was never disclosed in Mr. Smith's schedules, the interest was not abandoned, and remained property of the estate under 11 U.S.C. § 554(d), when the case closed in March 2013.

The trial judge in the Florida Litigation denied the motion for directed verdict, reasoning:

> The argument misses the mark because the issue before the court involves the standing and membership interest of SEG, not [Orlando Gateway].
>
> Regardless of membership interest, Smith was manager/president of [Orlando Gateway]. As such he could dispose of company assets and satisfy company liabilities under the [Orlando Gateway] operating agreement. [Orlando Gateway's] membership interest in SEG was [Orlando Gateway's] asset, not Smith's personal asset, and not part of Smith's bankruptcy estate, just as [Orlando Gateway's] judgment was [Orlando Gateway's] liability and not dischargeable in Smith's bankruptcy proceeding.
>
> Smith's personal bankruptcy did not divest [Orlando Gateway] of the ability to operate and carry on its corporate affairs consistent with the [Orlando Gateway] operating agreement. Smith as manager/president of [Orlando Gateway], had the authority to partially satisfy [Orlando Gateway's] judgment by assigning [Orlando Gateway's] membership interest in SEG to [Good Gateway]. Accordingly, SEG had standing to bring the cross claim against the defendants.[3]

Judgments were entered on the verdicts in October 2014. The defendants appealed on the issues of Mr. Smith's authority and SEG's standing. The appeal has been pending since November 2014.

---

[3] Order On Defendants' Motion for Directed Verdict as to all SEG Gateway, LLC's Claims, entered Sept. 26, 2014, in the Florida Litigation (attached as Exhibit A to Motion for Judicial Notice with Supporting Memorandum of Law [AP Doc. 9]).

Since the entry of judgment, the parties have been attempting to avoid or enforce SEG's

judgments in numerous bankruptcy cases, adversary proceedings, and appeals in the bankruptcy

courts for the Middle District of Florida and the Northern District of Georgia.[4] The issue

---

[4] The parties have litigated various aspects and ramifications of the judgment in the following bankruptcy cases and adversary proceedings:

In the U.S. Bankruptcy Court for the Middle District of Florida:

- *In re Orlando Gateway Partners, LLC*, 15-03448-MGW; and associated appeals *Nilhan Financial, LLC v. Good Gateway, LLC, SEG Gateway LLC, and Emerson C. Noble*, 16-2044-PGB (M.D. Fla. Nov. 22, 2016); and *Nilhan Financial, LLC, Chittranjan K. Thakkar, NCT Systems, Inc., and Niloy & Rohan, LLC v. Good Gateway, LLC, SEG Gateway, LLC, Orlando Gateway Partners, LLC, and Nilhan Hospitality, LLC*, 16-2114-RBD (M.D. Fla. Dec. 9, 2016);

- *In re Nilhan Hospitality, LLC*, 15-03447-MGW; and associated appeals *Nilhan Hospitality, LLC and Nilhan Financial, LLC v. Good Gateway, LLC, SEG Gateway, LLC, and Emerson C. Noble*, 16-02062-JA (M.D. Fla. Nov. 28, 2016); and *Nilhan Financial, LLC, Chittranjan Thakkar, Niloy Thakkar, and Rohan Thakkar v. Good Gateway, LLC, SEG Gateway, LLC, Orlando Gateway Partners, LLC, and Nilhan Hospitality, LLC*, 16-02113-JA (M.D. Fla. Dec. 9, 2016);

- *Orlando Gateway Partners, LLC and Nilhan Financial, LLC v. Good Gateway, LLC*, 15-00084-MGW; and associated appeals *NCT Systems, Inc. and Chittranjan K. Thakkar v. Good Gateway, LLC and SEG Gateway, LLC*, 16-00029-RBD (M.D. Fla. Jan. 11, 2016); *Nilhan Financial, LLC, Niloy, Inc., and Chittranjan Thakkar v. Good Gateway, LLC and SEG Gateway, LLC*, 16-01427-RBD (M.D. Fla. Aug. 4, 2016); *NCT Systems, Inc., Niloy & Rohan, LLC, and Chittranjan Thakkar v. Good Gateway, LLC*, 16-01452-RBD (M.D. Fla. Aug. 12, 2016);

- *Good Gateway, LLC and SEG Gateway, LLC v. Nilhan Financial, LLC*, 15-00098-MGW;

- *Good Gateway, LLC and SEG Gateway, LLC v. Rohan Thakkar, Niloy Thakkar, Saloni Thakkar, Niloy, Inc., Nilhan Financial, LLC, RNT, LLC, and Saloni Thakkar, LLC*, 16-00063-MGW;

- *SEG Gateway, LLC and Good Gateway, LLC v. Nilhan Hospitality, LLC*, 16-00064-MGW;

- *Nilhan Hospitality, LLC v. Good Gateway, LLC*, 15-00083-MGW; and

- *Good Gateway, LLC and SEG Gateway, LLC v. BKGD, LLC, Chittranjan Thakkar, and Orlando Gateway, LLC*, 16-00062-MGW.

In the U.S. Bankruptcy Court for the Northern District of Georgia:

- *In Bay Circle Properties, LLC*, 15-58440-wlh (the main docket for the jointly administered cases of *In DCT Systems Group, LLC*, 15-58441-wlh; *In re Sugarloaf Centre, LLC*, 15-58442-wlh; *In re Nilhan Developers, LLC*, 15-58443-wlh; and *In re NRCT, LLC*, 15-58444-wlh);

- *In re Steven C. Smith*, 10-89420-pwb;

- *Bay Circle Properties, LLC and BKGD, LLC v. SEG Gateway, LLC and Good Gateway, LLC*, 16-05244-wlh;

- *Good Gateway, LLC and SEG Gateway, LLC v. Bay Circle Properties, LLC, Chttranjan K. Thakkar, and Jon E. Taylor*, 16-05334-wlh;

underlying this collateral litigation is the same issue on appeal in the Florida Litigation—Smith's authority to cause Orlando Gateway to transfer its interest in SEG to Good Gateway.

## C.  Proceedings in Mr. Smith's chapter 7 case

Mr. Smith filed his Chapter 7 petition and schedules on October 2, 2010. As noted, he did not disclose any interest in Orlando Gateway in his original schedules.[5] Mr. Smith received a discharge on January 31, 2011. The trustee liquidated a single asset, receiving $7,650 for distribution to creditors, who obtained a dividend of 0.06% for their claims. The case was closed on March 10, 2013.

On October 23, 2015, the United States Trustee moved to reopen the case [Doc. 80], stating that the former Chapter 7 trustee, Cathy Scarver, had been contacted by a Florida attorney with a client interested in buying the estate's interest in Orlando Gateway for $50,000. Per the United States Trustee's motion, Ms. Scarver contended that Mr. Smith's interest in Orlando Gateway was an unscheduled estate asset.

The Court granted the motion to reopen on November 10, 2015 [Doc. 82], and Ms. Scarver was re-appointed as Chapter 7 trustee [see Doc. 89]. The trustee moved to sell the estate's interest in Orlando Gateway to BKGD for $100,000 free and clear of interests and to set auction bidding procedures. [Doc. 93].[6]

Two of the defendants in this proceeding—Good Gateway and SEG—along with Carson Good and James Balletta,[7] objected to the trustee's motion. [Docs. 102 & 103]. They claimed

---

- *Good Gateway, LLC v. Cathy L. Scarver, as Trustee for the Estate of Steven C. Smith*, 16-05085-pwb; and

- *BKGD, LLC v. Clay Martin Townsend, Good Gateway, LLC, and SEG Gateway, LLC*, 16-05253-pwb.

[5] Mr. Smith's Statement of Financial Affairs, however, refers to a business named "Gateway Partners" that Mr. Smith operated from 2007 to 2009. [*See* Doc. 1 at 34]. The Statement of Financial Affairs also discloses the Florida Litigation. [*See* Doc. 1 at 29].

[6] The trustee's motion stated that BKGD is owned by Niloy Thakkar and Rohan Thakkar, and managed by Niloy Thakkar. [Doc. 93 at ¶ 19].

[7] James Balletta is or was an officer of SEG [*see* Affidavit of Morton Carson Good, Doc. 111-3 at ¶¶ 5, 6] and appears to be, or once was, one of Good Gateway's attorneys [*see* Statement of Financial Affairs, Doc. 1 at 19].

that (1) the estate had no interest in Orlando Gateway because Mr. Smith transferred his interest in Orlando Gateway, and Orlando Gateway's interest in SEG, to Good Gateway in March 2010 (prior to the filing of the bankruptcy case) in connection with litigation that Mr. Smith disclosed, and (2) this transfer was disclosed through tax returns provided to the trustee and actively discussed at the § 341 Meeting of Creditors. [*See* Doc. 102 at ¶¶ 21–22; Doc. 103 at ¶¶ 21–22].[8] They also claimed that BKGD was a bad faith purchaser, interested only in frustrating SEG's judgments entered in the Florida Litigation. [*See* Doc. 102 at ¶¶ 39–45; Doc. 103 at ¶¶ 39–45].

Good Gateway and SEG took the position that this Court had to first determine the estate's ownership in Orlando Gateway before approving the sale. [*See* Doc. 102 at ¶¶ 19, 20; Doc. 103 at ¶¶ 19, 29]. Good Gateway simultaneously filed an adversary proceeding against the trustee seeking a declaratory judgment that Mr. Smith's membership interest in Orlando Gateway never entered the estate and that Good Gateway owned the membership interests.[9]

The Court approved the proposed bidding procedures at an April 12, 2016, hearing, over the objections of Good Gateway and SEG. The Court scheduled a hearing on the sale motion itself for April 26. At that hearing, the trustee and BKGD announced that the proposed sale would not be free and clear of Good Gateway's and SEG's claims; instead, the transfer would be

---

[8] BKGD alleges that Orlando Gateway and SEG have for years taken the position that the transfer of SEG to Good Gateway occurred in January 2012, and that they only recently (in this Court) began asserting the transfer occurred in March 2010. *See* Amended Complaint at ¶¶ 74–81, 91, 95, 110. Affidavits filed with the Court in Mr. Smith's Chapter 7 case explain the transfer as follows. In March 2010, Mr. Smith informed Carson Good via phone that Mr. Smith, OG, and SEG had no legitimate defense to the lawsuit and that Mr. Smith did not intend to mount a defense. During this call, Mr. Smith orally transferred both (1) his interest in Orlando Gateway and (2) Orlando Gateway's interest in SEG to Good Gateway, in consideration of Carson Good not aggressively pursuing Mr. Smith and not executing a judgment on Mr. Smith. Mr. Smith continued to be a manager of Orlando Gateway despite transfer of ownership. The oral transfer of the SEG interests to Good Gateway was not reduced to writing until after judgments were entered (in June 2011) against Orlando Gateway and SEG. Mr. Smith executed that agreement in December 2011 in his capacity as manager of Orlando Gateway. Good Gateway executed the agreement in January 2012. *See* Affidavit of Morton Carson Good at ¶¶ 16, 21–25 [Doc. 111-3]; Affidavit of Steven C. Smith at ¶¶ 9–12 [Doc. 111-2]; Affidavit of Clay M. Townsend at ¶¶ 11, 26–28 [Doc. 116].

Because the Court abstains from deciding the claims to which the transfers are relevant, the Court need not address these disputes.

[9] *See* Adv. Proc. 16-05085, Docket No. 1 [Doc. 111 in the main case].

"as is, where is," with no express or implied representations or warranties. Good Gateway and SEG objected, again, on the basis that the Court had to determine ownership interests in Orlando Gateway before approving the sale.

The Court continued the hearing so that Good Gateway and SEG could obtain witnesses to testify to the estate's lack of interest in Orlando Gateway. The Court made it clear at the April 26 hearing, however, that: (1) the Court did not think it had to determine ownership interests before approving a quitclaim bill of sale; (2) even assuming the estate had no interest because Mr. Smith had transferred it prepetition, the Court would approve a quitclaim bill of sale from the trustee to a third party; and (3) post-sale, the Court expected the parties to litigate ownership of Orlando Gateway elsewhere.[10]

The hearing was continued to June 14. At that hearing, Good Gateway and SEG renewed their argument that the Court had to determine ownership interests in Orlando Gateway before approving the trustee's sale. They did not introduce evidence. The Court concluded that it could—without first determining the estate's ownership interest—approve the sale of the estate's

_____

[10] *See, e.g.*, Transcript of April 26, 2016, Hearing (Exhibit C to Motion for Judicial Notice [AP Doc. 9]) at 28:17–21 ("But I think the trustee, if somebody wants to give the estate $100,000 for a quit claim deed to the Brooklyn Bridge, then God bless the trustee's negotiating power. The creditors get the $100,000."); 28:29–29:8 ("So your facts, I assume your facts. I assume that Mr. Smith did not own this property. Nevertheless, somebody is willing to buy whatever interest he has. I cannot think of a reason that the trustee can't say, okay, you want what I got. I don't think there's much there, the Court's assumed that I don't have anything. Looks like it's the lucky day for the creditors of this estate."); 33:15–19 ("If it's been decided, it's been decided. And so if they bring it up in some other court, some other place, some other court, some other place can make that determination."); 35:11–17, 23 ("But I am going to give you two weeks to do whatever it is you want to do. And if you insist in two weeks on putting on three witnesses to testify, and then [the trustee] can move for a directed verdict which would basically say assume that it's all okay, they still lose, I will grant that motion. … And I made my decision on the legal issue."); 39:4–9 ("In this case, the purchaser is willing to accept a quit claim deed, a quit claim assignment that says, as I get it, I, the trustee, do hereby give to the purchaser whatever I have. No representations. No warranties. And if there are any termites, you got them too."); 40:12–13, 15–17 ("[T]his Court doesn't have to decide [the] issue. … Some other court can decide if it's relevant somewhere else. If it's relevant, somewhere else, let that court figure it out."); 51:4–5, 15–16, 18–22 ("Well, I don't intend as part of this process to determine this issue. … Assume you're right on all factual points[.] … The trustee can still sell the Brooklyn Bridge or air or the neighbor's house but that doesn't mean that the purchaser can move into the neighbor's house unless the trustee actually had title."); 55:2–8 ("I am not sure you really want a declaratory judgment if you don't get the injunction. Unless you want this Court to decide it. But that gets into jurisdictional issues. Because at that time [i.e., post-sale], the question is what difference does it make to the estate?").

interest in Orlando Gateway to BKGD.[11] The Order authorizing the sale was entered June 22, 2016 [Doc. 147]. The Order stated, in relevant part, the following (at pages 7–8; emphasis in original):

> For the reasons stated herein and the reasons set forth on the record at the hearings on April 26, 2016 and the final hearing on June 14, 2016, <u>except as to the actual ownership of the Property</u>, the objections asserted by the Respondents are **OVERRULED** on the merits and denied with prejudice. Specifically, the Court concludes that the Trustee may quitclaim the estate's right, title, and interest in the Property. *In re Global Reach Inv. Corp.*, Bk. No. 10-32303, 2012 WL 933594 (B.A.P. 9th Cir. 2012); *In re Atlantic Gulf Communities Corp.*, 326 B.R. 294 (Bankr. D. Del. 2005).
>
> …
>
> [T]he Trustee is authorized to sell any and all rights, title, and interests that the bankruptcy estate may have in the Debtor's interest in Orlando Gateway, LLC, a Georgia LLC, to BKGD, LLC for the purchase price of $100,000.00. The Court makes no findings of fact or conclusions of law as to the extent of the Bankruptcy Estate's /Debtor's interest in the Property. All claims and defenses as to the actual ownership of the Property are hereby preserved for subsequent adjudication.

Good Gateway thereafter voluntarily dismissed its adversary proceeding against the trustee.[12] The sale of the estate's interest in Orlando Gateway to BKGD closed on July 18, 2016.[13]

## D.  Good Gateway and SEG's Declaratory Judgment Suit in Florida

On June 9, 2016—after the April 26 hearing at which the Court stated it would approve a quitclaim bill of sale, but before the June 14 hearing at which the Court formally approved the sale—Good Gateway and SEG filed a lawsuit in Orange County, Florida (the "Declaratory Judgment Suit"), against BKGD, Mr. Thakkar, and Orlando Gateway.[14] The complaint sought, among other things, a declaratory judgment that Good Gateway was the sole owner and member of SEG, that BKGD and Mr. Thakkar had no interest in SEG, and that BKGD and Mr. Thakkar

---

[11] *See* Transcript of June 14, 2016, Hearing [Adv. Proc. No. 16-05085, Docket 15] at 19:12–26:8.

[12] *See* Adv. Proc. No. 16-05085, Docket 14.

[13] *See* Trustee's Report of Sale [Doc. 152].

[14] The full case name of the Declaratory Judgment Suit is *Good Gateway, LLC, and SEG Gateway, LLC v. Chittranjan K. Thakkar, BKGD, LLC, and Orlando Gateway, LLC*, Case No. 2016-CA-005038, Ninth Judicial Circuit in and for Orange County, Florida.

had no interest in Mr. Smith's membership interest in Orlando Gateway notwithstanding the Chapter 7 trustee's proposed quitclaim bill of sale.

BKGD and Mr. Thakkar removed the Declaratory Judgment Suit to the Bankruptcy Court for the Middle District of Florida as an adversary proceeding related to the Chapter 7 cases of OGP and Nilhan Hospitality[15] (filed as Chapter 11 cases in April 2015). Orlando Gateway joined in the removal "by virtue of BKDG's purchase of Steven Smith's … chapter 7 bankruptcy estate's interest in Smith's interest in" Orlando Gateway.[16]

The bankruptcy court remanded the Declaratory Judgment Suit on August 19, 2016. The court noted, "This recently filed state court action concerns the ownership of Orlando Gateway and directly relates to the issues on appeal to the Florida Fifth District Court of Appeals."[17]

On remand, the Florida state court entered defaults against Orlando Gateway on August 24 and against BKGD on September 2. On September 8, the Florida court entered a Default Final Judgment against Orlando Gateway. It stated, in relevant part:

> Final judgment is hereby entered against Defendant Orlando Gateway finding and declaring that: (1) SEG is comprised of only one member, Good Gateway, who is the managing member of SEG; (2) Good Gateway has sole ownership interest in Smith's membership in Orlando Gateway; (3) Good Gateway's membership interest in Orlando Gateway to be superior to that of any other party; (4) no party other than Good Gateway has any interest in Smith's former membership in Orlando Gateway notwithstanding any purported Bankruptcy Trustee's quitclaim bill of sale; (5) that the 2012 Transfer from Orlando Gateway to Good Gateway is effective and the September 26, 2014 Order … is binding; (6) that, any purported right, claim or interest of any party other than Good Gateway is barred by judicial estoppel, waiver, laches and the administrative dissolution of Orlando Gateway by the state of Georgia in 2010[.][18]

---

[15] *See* Joint Notice of Removal, Doc. 1, Adv. Proc. No. 16-00062 (Bankr. M.D. Fla. July 12, 2016) (in this proceeding's record at Ex. F to the defendants' Supplemental Motion for Judicial Notice [AP Doc. 13]).

[16] *Id.* at 2.

[17] Order Remanding Adversary Proceeding, Doc. 10 at 3, Adv. Proc. No. 16-00062 (Ex. H to the defendants' Supplemental Motion for Judicial Notice [AP Doc. 13]).

[18] Default Final Judgment Against Defendant Orlando Gateway, LLC at 2–3 (Ex. F to Motion for Judicial Notice [Doc. 9]).

On September 23, BKGD, Mr. Thakkar, and Orlando Gateway moved to set aside the entry of default against BKGD and the Default Final Judgment against Orlando Gateway. As to the Default Final Judgment, they argued: (1) service on Orlando Gateway was improper because SEG and Good Gateway served Mr. Smith rather than the trustee of his Chapter 7 estate; (2) the lawsuit was void as a violation of the automatic stay in Mr. Smith's Chapter 7 case; and (3) excusable neglect.[19]

On December 16 the Florida court granted the motion to set aside entry of default against BKGD but denied the motion to set aside the Default Final Judgment against Orlando Gateway. As to the denial of the motion to set aside Default Final Judgment, the court concluded: (1) Mr. Smith remained the registered agent on file with the Georgia Secretary of State, and the defendants had not shown that the Chapter 7 trustee had become a registered agent, manager, or member such that service on her was permitted; (2) the Order authorizing the sale specifically contemplated adjudication of ownership of Orlando Gateway in another forum; and (3) the purported excusable neglect was not supported by an affidavit or sworn statement setting forth the facts surrounding the neglect.[20]

On December 30, the defendants in the Declaratory Judgment Suit moved to reconsider the order denying the motion to set aside the Default Final Judgment. The Florida court denied that motion on February 22, 2017.

On March 21, the defendants appealed the orders denying the motion to set aside the Default Final Judgment and denying the motion to reconsider that order.[21]

---

[19] *See* Motion to: (i) Set Aside Default Judgment and Clerk's Entries of Default and, if Motion to Dismiss for Improper Venue is Denied, (ii) Extend Time to Response to the Complaint; and Alternative Motion for Reconsideration/Rehearing (Ex. 1 to the defendants' Second Supplemental Motion for Judicial Notice [AP Doc. 16]).

[20] *See* Order Granting In Part and Denying in Part Defendants' Motion to Set Aside Default Judgment and Clerk's Entries of Default (Ex. 4 to Second Supplemental Motion for Judicial Notice [AP Doc. 16]); Defendants' Motion to Set Aside Default Judgment and Clerk's Entries of Default (Ex. 1 to Second Supplemental Motion for Judicial Notice [AP Doc. 16]).

[21] The motion to reconsider, order denying it, and notice of appeal are not in the record. The docket for the Declaratory Judgment Suit is publicly available. The Court refers to these documents merely for

**E.  This adversary proceeding**

Around the time BKGD, Mr. Thakkar, and Orlando Gateway were seeking to set aside entry of default and the Default Final Judgment in the Declaratory Judgment Suit, BKGD filed two adversary proceedings in this bankruptcy court.

On September 29, 2016, BKGD filed Adv. Proc. No. 16-5244-wlh against Good Gateway and SEG. That proceeding is related to the Chapter 11 case of Bay Circle Properties, LLC, 15-58440-wlh, and cases jointly administered under the same case number.[22]

BKGD initiated this adversary proceeding on October 4, 2016.

Aside from requests unique to the Smith and Bay Circle bankruptcy cases, the two adversary complaints request substantially the same relief—declaratory judgments that BKGD owns Orlando Gateway and that Good Gateway has no authority to control Orlando Gateway or SEG.[23]

The complaint in this proceeding, as amended on October 24, 2016, has four counts. Count 1 is for "willful and vengeful violation of the automatic stay" by SEG, Good Gateway, and their attorney Clay Townsend by filing the Declaratory Judgment Suit.

Count 2 seeks a determination that Mr. Smith owned Orlando Gateway when he filed his Chapter 7 petition, that after filing, only the trustee had the rights to operate and manage Orlando Gateway, and that any attempts to transfer Mr. Smith's interest in Orlando Gateway or its assets are void.

Count 3 seeks a determination that the judgment against Orlando Gateway in the Florida Litigation is void as obtained in violation of the automatic stay in Mr. Smith's bankruptcy case.

---

background. The Court did not consider those documents when determining the outcome of the matters currently before the Court.

[22] The entities whose cases are being jointly administered under Case No. 15-58440-wlh are Thakkar Entities not subject to any Florida Litigation judgments. Good Gateway and SEG, however, filed claims against those entities based on those judgments, asserting several theories of recovery, including alter ego and fraudulent conveyance.

[23] The complaint in Adv. Proc. No. 16-5244-wlh includes objections to claims; the complaint in this proceeding includes a count for willful violation of the automatic stay.

Count 4 seeks a determination that the Chapter 7 trustee's sale of the estate's interest in Orlando Gateway conveyed all rights, title, and interest in Orlando Gateway—including Orlando Gateway's 86.378% interest in SEG—to BKGD.

In this proceeding and in Adv. Proc. No. 16-5244-wlh, the defendants moved to dismiss, abstain, or stay. Numerous responses and replies have followed in each proceeding. In Adv. Proc. No. 16-5244-wlh, Judge Hagenau heard the defendants' motion to dismiss, abstain, or stay on February 9. Judge Hagenau stayed the counts seeking a declaratory judgment regarding ownership and authority over Orlando Gateway and SEG. Those matters are stayed pending the adjudications of this proceeding, the appeal in the Florida Litigation, and the Declaratory Judgment Suit.[24]

No hearing has been set or requested on the motions currently before the Court.

## II.    ANALYSIS

### A.    Counts seeking declaratory judgment and determination of rights and interests in Orlando Gateway (Counts 2, 3, and 4)

The defendants have moved this Court to abstain from, or to stay a determination of, the counts seeking declaratory relief, pending the outcomes of the Florida Litigation and the Declaratory Judgment Suit.

Under 28 U.S.C. § 1334(c)(1), the Court may abstain from hearing a particular proceeding "in the interest of justice, or in the interest of comity with State courts or respect for State law." The purpose of permissive abstention under § 1334(c)(1) is to "ensure that the jurisdiction of the bankruptcy court is exercised only when appropriate to the expeditious disposition of bankruptcy cases." *Queen v. Bank of America, N.A. (In re Queen)*, No. 13-57784-WLH, 2013 WL 6116864, at *2 (Bankr. N.D. Ga. Nov. 18, 2013) (quoting *Graham v. Yoder Machinery Sales (In re Weldon F. Stump & Co.)*, 373 B.R. 823, 828 (Bankr. N.D. Ohio 2007)).

---

[24] *See* Order granting Defendants' Motion to Dismiss, Abstain, or Stay, Doc. 21, Adv. Proc. 16-05244-wlh.

As explained below, the Court will abstain under 28 U.S.C. § 1334(c)(1) from determining Counts 2, 3, and 4.

Bankruptcy courts generally look to the following non-exclusive factors to determine whether abstention is appropriate:

> (1) the effect of abstention on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the basis of bankruptcy jurisdiction, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14) the possibility of prejudice to the other parties in the action.

*Flyboy Aviation Props., LLC v. Franck (In re Flyboy Aviation Props., LLC)*, 2013 WL 2317628, at *2 (Bankr. N.D. Ga. May 21, 2013) (quoting *Lester v. TitleMax of South Carolina (In re Titlemax Holdings, LLC)*, 447 B.R. 896, 900 (Bankr. S.D. Ga 2010)). The Court has discretion to determine each factor's relevant weight in a given proceeding. *Id.*

The factors that weigh heaviest in the Court's decision to abstain here are those focusing on related state court proceedings (factors 4 and 13 above), the relation to and effect on the bankruptcy estate (factors 1, 5, 6, 7, and 12), and the likelihood that the proceeding involves forum shopping (factor 10).

The Court cannot grant the relief BKDG requests without determining that the trial court in the Florida Litigation was wrong when it ruled that Mr. Smith had authority as Orlando Gateway's manager or president to transfer Orlando Gateway's interest in SEG. BKGD requests, in essence, that this Court (1) rule on a matter that has been pending on appeal in Florida since November 2014 and (2) reverse the Florida Litigation trial court's ruling on Mr. Smith's

authority.[25]  This Court has no business interfering with the Florida courts by revisiting the merits of litigation pending in those courts.

This is particularly true because this proceeding involves exclusively non-debtor parties and because the outcome will have no effect on the administration of Mr. Smith's estate. As BKGD is aware, the Court has consistently stated its view that the Court did not have to determine the estate's interest in Orlando Gateway if the issue was not relevant to the administration of the estate.[26] The issue became irrelevant when BKGD purchased the estate's interest in Orlando Gateway via a quitclaim bill of sale. The Court, to be sure, does not take the allegations of undisclosed assets and postpetition transfers lightly. But this Court's role in the dispute became unnecessary after the sale.

This Court's jurisdiction with regard to these matters is based on BKGD's assertions that Orlando Gateway and Mr. Smith's interest in it were property of the estate and that those interests were not properly transferred six years ago.  A proceeding to determine whether an asset is property of the estate, to be sure, is a core proceeding.  But once that asset has been transferred – especially when it is quitclaimed and the purchaser is fully aware of existing disputes with regard to the estate's interest, it is no longer property of the estate. Determination

---

[25] BKGD does not shy away from this. In fact, BKGD acknowledges that, for BKGD to win in this proceeding, this Court must substitute its judgment for that of the Florida Litigation trial court. See, e.g., Amended Complaint at ¶ 48 ("In February 2011, Smith had no authority to act as an agent for [Orlando Gateway] … without express authorization from the Trustee of the Smith Bankruptcy Estate"); ¶ 69 ("The Standing Order is incorrect."); ¶ 84 ("The Florida State Court adopted SEG's argument and ruled in its favor. This ruling is directly contrary to (1) the Operating Agreement of OG, which provides that OG is member managed; and (2) on point bankruptcy precedent, which states that when the sole member of a LLC files for bankruptcy, the Trustee obtains both the membership interest and the authority to manage the LLC.").

[26] See, e.g., Transcript of April 26, 2016 hearing at 40:12–13, 15–17 ("[T]his Court doesn't have to decide [the] issue. … Some other court can decide if it's relevant somewhere else. If it's relevant, somewhere else, let that court figure it out."); 55:2–8 ("I am not sure you really want a declaratory judgment if you don't get the injunction. Unless you want this Court to decide it. But that gets into jurisdictional issues. Because at that time [i.e., post-sale], the question is what difference does it make to the estate?"); Transcript of April 12, 2016, hearing at 14:2 – 5 [Doc. 112 in main case] ("Let me make this clear. If there is a dispute about who owns this property, I will decide that issue if I have to and it is not pending somewhere else.").

of whether an asset *was* property of the estate has nothing to do with its current administration or the outcome of the case and therefore does not involve the substance of the Court's jurisdiction over core proceedings.

With regard to forum shopping, the Court notes that it is the most recent of several attempts by a Thakker Entity to challenge the results of the Florida Litigation in bankruptcy courts.[27]

When the Florida Litigation was, post-judgment, removed to the Bankruptcy Court for the Middle District of Florida (where the bankruptcy cases of OGP and Nilhan Hospitality were pending), the Florida Litigation defendants moved the bankruptcy court for reconsideration of the final judgment. The bankruptcy court denied the motion on July 26, 2016, stating:

> Thakkar, at this late date and with a new lawyer trying a new tactic, then belatedly filed this Motion for Reconsideration asking this Court, as a substitute for the Fifth District Court of Appeals, to rule on the pending appeals, using the briefs filed before the Florida Appellate Court. Thakkar argues reconsideration is merited under Federal Rules of Civil Procedure 59 and 60 because the state court judgments are "fatally flawed." He primarily argues that the state court trial judge erred on the standing and percentage ownership of SEG Gateway and that the Fifth District Court of Appeals lacks jurisdiction to correct the error …. Thakkar argues that the Bankruptcy Court should first "fix" the error and then allow a federal district court to rule on the remaining appellate issues, if needed, after reconsideration.
> …
> Thakkar has established no basis to allow reconsideration. He complains that the trial court erred. He properly and timely filed appeals to the Fifth DCA. The Fifth DCA soon will take the issue under advisement in the pending appeals and will rule in due course. Thakkar makes no rational argument why this Court should substitute its opinion for that of a very capable state appellate court ….[28]

In a different adversary proceeding, also related to OGP's and Nilhan Hospitality's bankruptcy cases, another Thakkar Entity, Nilhan Financial, LLC, sought a declaration that

---

[27] Moreover, BKGD's purchase of the estate's interest in Orlando Gateway appears to have been itself a tactic to influence the appeal in the Florida Litigation. *See, e.g.*, Transcript of April 26, 2016, hearing at 17:8–10 (BKGD's attorney opposed a hearing continuance, stating, "Judge, we have appeals that are pending in Florida. Some of those appeals may or may not be impacted by what happens in this Court.").

[28] Memorandum Opinion Denying Judgment Debtors' Motion for Reconsideration, Doc. 286, Adv. Proc. 15-00084 (Bankr. M.D. Fla. July 28, 2016) (attached as Exhibit K to the defendants' Motion for Judicial Notice [AP Doc. 9]).

Orlando Gateway's transfer of SEG was invalid because only Ms. Scarver, the trustee of Mr.

Smith's estate, was authorized to effect the transfer. The bankruptcy court dismissed the claim on

collateral estoppel grounds and, alternatively, permissively abstained, noting:

> The Court finds that all elements of collateral estoppel are present. The Directed Verdict Order applies to all defendants in the State Court proceeding and those in privity with the State Court Defendants. The Directed Verdict Order resolved identical issues to NF's counterclaim because the Directed Verdict Order decided whether Smith's transfer of interest in [Orlando Gateway]/SEG was valid. In other words, the Directed Verdict Order specifically decided that Smith's actions were proper. A determination that Smith's action was fraudulent or that Smith could not dispose of the interest in [Orlando Gateway]/SEG is essentially the *same dispute* that the State Court disposed of with the Directed Verdict Order. The issues were fully briefed and litigated before the State Court as evidenced by the State Court Defendants' brief and [Good Gateway]/SEG's response. The Directed Verdict Order is a final decision rendered by a court of competent jurisdiction. All elements of collateral estoppel are established.
> …
> Here, it is easy to conclude that abstention is appropriate. The Florida Fifth District Court of Appeals is considering an appeal from a complex commercial case resulting in a multi-million dollar verdict. The appeal, in part, hinges on whether the trial court erred in entering the Order Denying the State Court Defendants' Motion for Directed Verdict. State law issues predominate. The state courts are aptly handling the resolution of the issues and the appeal. There simply is no reason for the Bankruptcy Court to "substitute in" at this late date when the state court is the better court and perfectly competent to render its ruling on appeal. This Court will not intercede. Abstention is in the interest of comity with the State courts, in the interest of the estate, and in the interest of justice.
> For all of these reasons, [Good Gateway]/SEG's Motion to Dismiss is granted. Both counts of the counterclaim are dismissed without prejudice to permit the Florida appellate courts to finally rule on the pending appeal.[29]

BKGD and Mr. Thakkar fared no better when they removed the Declaratory Judgment

Suit to the Bankruptcy Court for the Middle District of Florida. The bankruptcy court promptly

remanded the Declaratory Judgment Suit, noting, "This recently filed state court action concerns

---

[29] Memorandum Opinion Granting Counterdefendants' Motion to Dismiss at 5, 6, Doc. 38, Adv. Proc. 15-00098 (Bankr. M.D. Fla. Apr. 29, 2016) (Westlaw database citation: 2016 WL 2587347, at *3–4).

the ownership of Orlando Gateway and directly relates to the issues on appeal …. Remand is appropriate to allow my sister court … to resolve any issues remanded upon appeal."[30]

The Court notes that the above litigation and rulings took place in bankruptcy cases where the issues *mattered*—the bankruptcy debtors are also Florida Litigation judgment debtors. After Thakker Entities lost in state court and had no success in the bankruptcy court where these issues are relevant, another Thakker Entity has come to this Court for a different result. This Court's exercise of jurisdiction in these circumstances is not appropriate.

The Court, therefore, concludes that the interests of justice require abstention as to Counts 2, 3, and 4 of the Amended Complaint. Accordingly, the Court will abstain under 28 U.S.C. §1334(c)(1) from deciding those counts and will dismiss them, without prejudice.

**B.       Count alleging violation of the automatic stay (Count 1)**

BKGD alleges that the filing of the Declaratory Judgment Suit constituted a "willful and vengeful violation of the automatic stay." BKGD seeks a judgment voiding the filing of the Declaratory Judgment Suit and an award of damages for the fees and costs of this proceeding and of the Declaratory Judgment Suit.

The defendants have moved to dismiss this count for failure to state a claim on which relief can be granted. The defendants argue dismissal is appropriate because (1) BKGD lacks standing to bring this claim, as it is not the trustee, the debtor, or a creditor of Mr. Smith's estate; (2) the Chapter 7 trustee has not asserted a stay violation; and (3) BKGD has suffered no damages because everyone contemplated eventual litigation over ownership of Orlando Gateway.

The Court questions whether Count 1 can or should proceed. The Court will hold a status conference on BKGD's claim for willful violation of the automatic stay. The status conference will be set for April 25, 2017, at 10:00 o'clock a.m. The Court instructs counsel for the parties to be prepared to address the question of whether Count 1 can or should proceeding, including (but

---

[30] Order Remanding Adversary Proceeding, Doc. 10, Adv. Proc. No. 16-00062 (Bankr. M.D. Fla. Aug. 19, 2016) (Ex. H to the defendants' Supplemental Motion for Judicial Notice [AP Doc. 13]).

not limited to) the issues of (1) whether BKGD has standing to assert violations of the automatic stay and (2) whether it is appropriate for the Court to annul the automatic stay.

## III.    CONCLUSION

For the forgoing reasons, it is hereby

**ORDERED** that Court abstains under 28 U.S.C. 1334(c)(1) from determining Counts 2, 3, and 4 of the Amended Complaint and, therefore, will dismiss those counts, without prejudice. It is further

**ORDERED** that the Court shall hold a status conference on Count 1 of the Amended Complaint. The status conference will be held on April 25, 2017, at 10:00 o'clock a.m. in Courtroom 1401, United States Courthouse, Richard B. Russell Federal Building, 75 Ted Turner Drive, S.W., Atlanta, Georgia.

This Order has not been prepared for publication and is not intended for publication.

**END OF ORDER**