

**IT IS ORDERED as set forth below:**

**Date: April 9, 2018**

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| STEVEN C. SMITH, | CASE NO. 10-89420-PWB |
| Debtors. | |
| | CHAPTER 7 |
| BKGD, LLC, | |
| Plaintiff, | |
| v. | ADVERSARY PROCEEDING |
| | NO.  16-5253-PWB |
| CLAY MARTIN TOWNSEND, GOOD GATEWAY, LLC, and SEG GATEWAY, LLC, | |
| Defendants. | |

<u>**ORDER**</u>

This matter comes before the Court on the Defendants' Motion to Annul Stay [AP Doc. 42[1]] and Amended Motion to Dismiss [AP Doc. 43], and the Plaintiff's responses thereto.

## I.  Procedural Background

To say that the parties to this adversary proceeding have engaged in extensive litigation (much of it elsewhere) would be a vast understatement. The litigation is complex and the parties have litigated for years, in multiple forums, with multiple appeals.   The Court recited the lengthy factual background in its April 10, 2017 Order, *BKGD, LLC v. Townsend, Good Gateway, LLC, and SEG Gateway, LLC (In re Smith)*, 2017 WL 1323461 (Bankr. N.D. Ga. April 10, 2017), and sees no need to repeat it here, except in a very limited fashion focusing on the bankruptcy case and the 2016 Florida litigation.

The Debtor, Mr. Steven C. Smith, filed his Chapter 7 petition and schedules on October 2, 2010. He did not disclose any interest in Orlando Gateway in his original schedules.[2] Mr. Smith received a discharge on January 31, 2011. The trustee liquidated a single asset, receiving $7,650 for distribution to creditors, who received a dividend of 0.06% on their claims. The case was closed on March 10, 2013.

---

[1]Citations to "AP Doc." are to documents in the adversary proceeding. Citations to "Doc." are to documents in the main case, No. 10–89420.
[2] Mr. Smith's Statement of Financial Affairs, however, refers to a business named "Gateway Partners" that Mr. Smith operated from 2007 to 2009. [See Doc. 1 at 34]. The Statement of Financial Affairs also discloses the Florida Litigation. [See Doc. 1 at 29].

On October 23, 2015, the United States Trustee moved to reopen the case [Doc. 80], stating that the former Chapter 7 trustee, Cathy Scarver, had been contacted by a Florida attorney with a client interested in buying the estate's interest in Orlando Gateway, LLC, for $50,000. Per the United States Trustee's motion, Ms. Scarver contended that Mr. Smith's interest in Orlando Gateway was an unscheduled estate asset.

The Court granted the motion to reopen on November 10, 2015 [Doc. 82], and Ms. Scarver was re-appointed as Chapter 7 trustee [see Doc. 89]. The trustee moved to sell the estate's interest in Orlando Gateway to BKGD for $100,000 free and clear of interests and to set auction bidding procedures. [Doc. 93].[3]

Two of the defendants in this proceeding—Good Gateway and SEG Gateway ("SEG")—along with Carson Good and James Balletta, objected to the trustee's motion. [Docs. 102 & 103]. They claimed that (1) the estate had no interest in Orlando Gateway because Mr. Smith transferred his interest in Orlando Gateway, and Orlando Gateway's interest in SEG, to Good Gateway in March 2010 (prior to the filing of the bankruptcy case) in connection with litigation that Mr. Smith disclosed, and (2) this transfer was disclosed through tax returns provided to the trustee and actively discussed at the § 341 Meeting of Creditors. [See Doc. 102 at ¶¶ 21–22; Doc. 103 at ¶¶ 21–22]. They also claimed that BKGD was a bad faith purchaser, interested

---

[3] The trustee's motion stated that BKGD is owned by Niloy Thakkar and Rohan Thakkar, and managed by Niloy Thakkar. [Doc. 93 at ¶ 19].

only in frustrating SEG's judgments entered in the Florida Litigation. [See Doc. 102 at ¶¶ 39–45; Doc. 103 at ¶¶ 39–45].

Good Gateway and SEG Gateway took the position that this Court had to first determine the estate's ownership in Orlando Gateway before approving the sale. [See Doc. 102 at ¶¶ 19, 20; Doc. 103 at ¶¶ 19, 29]. Good Gateway simultaneously filed an adversary proceeding against the trustee seeking a declaratory judgment that Mr. Smith's membership interest in Orlando Gateway never entered the estate and that Good Gateway owned the membership interests.[4]

The Court approved the proposed bidding procedures at an April 12, 2016, hearing, over the objections of Good Gateway, SEG Gateway, Carson Good, and James Balletta. The Court scheduled a hearing on the sale motion itself for April 26. At that hearing, the trustee and BKGD announced that the proposed sale would not be free and clear of Good Gateway's and SEG's claims; instead, the transfer would be "as is, where is," with no express or implied representations or warranties. Good Gateway and SEG objected, again, on the basis that the Court had to determine ownership interests in Orlando Gateway before approving the sale.

The Court continued the hearing so that Good Gateway and SEG could obtain witnesses to testify to the estate's lack of interest in Orlando Gateway. The Court made it clear at the April 26 hearing, however, that: (1) the Court did not think it had to determine ownership interests before approving a quitclaim bill of sale; (2) even

---

[4] *See* Adv. Proc. 16–05085, Docket No. 1 [Doc. 111 in the main case].

assuming the estate had no interest because Mr. Smith had transferred it prepetition, the Court would approve a quitclaim bill of sale from the trustee to a third party; and (3) post-sale, the Court expected the parties to litigate ownership of Orlando Gateway elsewhere.[5]

The hearing was continued to June 14. At that hearing, Good Gateway and SEG renewed their argument that the Court had to determine ownership interests in Orlando Gateway before approving the trustee's sale. They did not introduce evidence. The Court concluded that it could—without first determining the estate's

---

[5]*See, e.g.*, Transcript of April 26, 2016, Hearing (Exhibit C to Motion for Judicial Notice [AP Doc. 9]) at 28:17–21 ("But I think the trustee, if somebody wants to give the estate $100,000 for a quit claim deed to the Brooklyn Bridge, then God bless the trustee's negotiating power. The creditors get the $100,000."); 28:29–29:8 ("So your facts, I assume your facts. I assume that Mr. Smith did not own this property. Nevertheless, somebody is willing to buy whatever interest he has. I cannot think of a reason that the trustee can't say, okay, you want what I got. I don't think there's much there, the Court's assumed that I don't have anything. Looks like it's the lucky day for the creditors of this estate."); 33:15–19 ("If it's been decided, it's been decided. And so if they bring it up in some other court, some other place, some other court, some other place can make that determination."); 35:11–17, 23 ("But I am going to give you two weeks to do whatever it is you want to do. And if you insist in two weeks on putting on three witnesses to testify, and then [the trustee] can move for a directed verdict which would basically say assume that it's all okay, they still lose, I will grant that motion.... And I made my decision on the legal issue."); 39:4–9 ("In this case, the purchaser is willing to accept a quit claim deed, a quit claim assignment that says, as I get it, I, the trustee, do hereby give to the purchaser whatever I have. No representations. No warranties. And if there are any termites, you got them too."); 40:12–13, 15–17 ("[T]his Court doesn't have to decide [the] issue.... Some other court can decide if it's relevant somewhere else. If it's relevant, somewhere else, let that court figure it out."); 51:4–5, 15–16, 18–22 ("Well, I don't intend as part of this process to determine this issue.... Assume you're right on all factual points[.] ... The trustee can still sell the Brooklyn Bridge or air or the neighbor's house but that doesn't mean that the purchaser can move into the neighbor's house unless the trustee actually had title."); 55:2–8 ("I am not sure you really want a declaratory judgment if you don't get the injunction. Unless you want this Court to decide it. But that gets into jurisdictional issues. Because at that time [i.e., post-sale], the question is what difference does it make to the estate?").

ownership interest—approve the sale of the estate's interest in Orlando Gateway to

BKGD.[6] The Order authorizing the sale was entered June 22, 2016 [Doc. 147].

The Order stated, in relevant part, the following (at pages 7–8; emphasis in

original):

> For the reasons stated herein and the reasons set forth on the
> record at the hearings on April 26, 2016 and the final hearing on June
> 14, 2016, except as to the actual ownership of the Property, the
> objections asserted by the Respondents are OVERRULED on the
> merits and denied with prejudice. Specifically, the Court concludes
> that the Trustee may quitclaim the estate's right, title, and interest in
> the Property. *In re Global Reach Inv. Corp.*, Bk. No. 10-32303, 2012
> WL 933594 (B.A.P. 9th Cir. 2012); *In re Atlantic Gulf Communities
> Corp.*, 326 B.R. 294 (Bankr. D. Del. 2005).
>
> . . .
>
> [T]he Trustee is authorized to sell any and all rights, title, and
> interests that the bankruptcy estate may have in the Debtor's interest
> in Orlando Gateway, LLC, a Georgia LLC, to BKGD, LLC for the
> purchase price of $100,000.00. The Court makes no findings of fact
> or conclusions of law as to the extent of the Bankruptcy Estate's
> /Debtor's interest in the Property. All claims and defenses as to the
> actual ownership of the Property are hereby preserved for subsequent
> adjudication.

Good Gateway thereafter voluntarily dismissed its adversary proceeding

against the trustee. The sale of the estate's interest in Orlando Gateway to BKGD

closed on July 18, 2016.[7]

---

[6] *See* Transcript of June 14, 2016, Hearing [Adv. Proc. No. 16–05085, Docket 15] at 19:12–26:8.
[7] *See* Trustee's Report of Sale [Doc. 152].

On June 9, 2016—after the April 26 hearing at which the Court stated it would approve a quitclaim bill of sale, but before the June 14 hearing at which the Court formally approved the sale—Good Gateway and SEG filed a lawsuit in Orange County, Florida (the "Declaratory Judgment Suit"), against BKGD, Mr. Chittranjan Thakkar, and Orlando Gateway.[8] The complaint sought, among other things, a declaratory judgment that Good Gateway was the sole owner and member of SEG, that BKGD and Mr. Thakkar had no interest in SEG, and that BKGD and Mr. Thakkar had no interest in Mr. Smith's membership interest in Orlando Gateway notwithstanding the Chapter 7 trustee's proposed quitclaim bill of sale.

BKGD and Mr. Thakkar removed the Declaratory Judgment Suit to the Bankruptcy Court for the Middle District of Florida as an adversary proceeding related to the Chapter 7 cases of OGP and Nilhan Hospitality (filed as Chapter 11 cases in April 2015).[9]  Orlando Gateway joined in the removal "by virtue of BKDG's purchase of Steven Smith's … chapter 7 bankruptcy estate's interest in Smith's interest in" Orlando Gateway.[10]

The bankruptcy court remanded the Declaratory Judgment Suit on August 19, 2016. The court noted, "This recently filed state court action concerns the ownership

---

[8] The full case name of the Declaratory Judgment Suit is *Good Gateway, LLC, and SEG Gateway, LLC v. Chittranjan K. Thakkar, BKGD, LLC, and Orlando Gateway, LLC*, Case No. 2016–CA–005038, Ninth Judicial Circuit in and for Orange County, Florida.

[9] *See* Joint Notice of Removal, Doc. 1, Adv. Proc. No. 16–00062 (Bankr. M.D. Fla. July 12, 2016) (in this proceeding's record at Ex. F to the defendants' Supplemental Motion for Judicial Notice [AP Doc. 13]).

[10] *Id.* at 2.

of Orlando Gateway and directly relates to the issues on appeal to the Florida Fifth

District Court of Appeals."[11]

On remand, the Florida state court entered defaults against Orlando Gateway

on August 24 and against BKGD on September 2. On September 8, the Florida court

entered a Default Final Judgment against Orlando Gateway. It stated, in relevant part:

> Final judgment is hereby entered against Defendant Orlando
> Gateway finding and declaring that: (1) SEG is comprised of only
> one member, Good Gateway, who is the managing member of SEG;
> (2) Good Gateway has sole ownership interest in Smith's
> membership in Orlando Gateway; (3) Good Gateway's membership
> interest in Orlando Gateway to be superior to that of any other
> party; (4) no party other than Good Gateway has any interest in
> Smith's former membership in Orlando Gateway notwithstanding
> any purported Bankruptcy Trustee's quitclaim bill of sale; (5) that
> the 2012 Transfer from Orlando Gateway to Good Gateway is
> effective and the September 26, 2014 Order … is binding; (6) that,
> any purported right, claim or interest of any party other than Good
> Gateway is barred by judicial estoppel, waiver, laches and the
> administrative dissolution of Orlando Gateway by the state of
> Georgia in 2010[.][12]

On September 23, BKGD, Mr. Thakkar, and Orlando Gateway moved to set

aside the entry of default against BKGD and the Default Final Judgment against

Orlando Gateway. As to the Default Final Judgment, they argued: (1) service on

Orlando Gateway was improper because SEG and Good Gateway served Mr. Smith

---

[11] Order Remanding Adversary Proceeding, Doc. 10 at 3, Adv. Proc. No. 16–00062 (Ex. H to the
Defendants' Supplemental Motion for Judicial Notice [AP Doc. 13]).

[12] Default Final Judgment Against Defendant Orlando Gateway, LLC at 2–3 (Ex. F to Motion for
Judicial Notice [Doc. 9]).

rather than the trustee of his Chapter 7 estate; (2) the lawsuit was void as a violation of the automatic stay in Mr. Smith's Chapter 7 case; and (3) excusable neglect.[13]

On December 16, the Florida court granted the motion to set aside entry of default against BKGD but denied the motion to set aside the Default Final Judgment against Orlando Gateway. As to the denial of the motion to set aside Default Final Judgment, the court concluded: (1) Mr. Smith remained the registered agent on file with the Georgia Secretary of State, and the defendants had not shown that the Chapter 7 trustee had become a registered agent, manager, or member such that service on her was permitted; (2) the Order authorizing the sale specifically contemplated adjudication of ownership of Orlando Gateway in another forum; and (3) the purported excusable neglect was not supported by an affidavit or sworn statement setting forth the facts surrounding the neglect.[14]

On December 30, the defendants in the Declaratory Judgment Suit moved to reconsider the order denying the motion to set aside the Default Final Judgment. The Florida court denied that motion on February 22, 2017.

---

[13] *See* Motion to: (i) Set Aside Default Judgment and Clerk's Entries of Default and, if Motion to Dismiss for Improper Venue is Denied, (ii) Extend Time to Response to the Complaint; and Alternative Motion for Reconsideration/Rehearing (Ex. 1 to the defendants' Second Supplemental Motion for Judicial Notice [AP Doc. 16]).

[14] *See* Order Granting In Part and Denying in Part Defendants' Motion to Set Aside Default Judgment and Clerk's Entries of Default (Ex. 4 to Second Supplemental Motion for Judicial Notice [AP Doc. 16] ); Defendants' Motion to Set Aside Default Judgment and Clerk's Entries of Default (Ex. 1 to Second Supplemental Motion for Judicial Notice [AP Doc. 16]).

On March 21, 2017, the defendants in the Declaratory Judgment Suit appealed the orders denying the motion to set aside the Default Final Judgment and denying the motion to reconsider that order.

On May 1, 2017, (after this Court entered its April 10 Order abstaining on Counts 2-4), the Florida Appeals Court for the Fifth District dismissed the appeal of Mr. Thakkar, BKGD, and Orlando Gateway.  It also granted Good Gateway and SEG's motion for attorney's fees and remanded to the circuit court for Orange County, Florida, to determine and assess reasonable attorney's fees for the appeal.[15]

Around the time BKGD, Mr. Thakkar, and Orlando Gateway were seeking to set aside entry of default and the Default Final Judgment in the Declaratory Judgment Suit, BKGD filed two adversary proceedings in this bankruptcy court.

On September 29, 2016, BKGD filed Adv. Proc. No. 16-5244-wlh against Good Gateway and SEG. That proceeding is related to the Chapter 11 case of Bay Circle Properties, LLC, 15-58440-wlh, and cases jointly administered under the same case number.[16]

BKGD initiated this adversary proceeding on October 4, 2016.

---

[15] *See* Order of the District Court of Appeal of the State of Florida Fifth District (Ex. E to Notice of Filing Pleadings and Documents Related to Florida Declaratory Judgment Suit filed by the Defendants)  [AP Doc. 27. Ex. E].

[16]  On August 2, 2017, Judge Hagenau entered an order in 16-5244-wlh abstaining from determining Counts III and IV of the complaint pursuant to 28 U.S.C. § 1334(c)(1) and dismissing said Counts. Doc. 28, Adv. Proc. 16-5244-wlh.  The adversary proceeding was administratively closed on October 17, 2017.

Aside from requests unique to the Smith and Bay Circle bankruptcy cases, the two adversary complaints request substantially the same relief—declaratory judgments that BKGD owns Orlando Gateway and that Good Gateway has no authority to control Orlando Gateway or SEG.

The complaint in this proceeding, as amended on October 24, 2016, has four counts. Count 1 is for "willful and vengeful violation of the automatic stay" by SEG, Good Gateway, and their attorney Clay Townsend by filing the Declaratory Judgment Suit.

Count 2 seeks a determination that Mr. Smith owned Orlando Gateway when he filed his Chapter 7 petition; that after filing, only the trustee had the rights to operate and manage Orlando Gateway; and that any attempts to transfer Mr. Smith's interest in Orlando Gateway or its assets are void.

Count 3 seeks a determination that the judgment against Orlando Gateway in the Florida Litigation is void as obtained in violation of the automatic stay in Mr. Smith's bankruptcy case.

Count 4 seeks a determination that the Chapter 7 trustee's sale of the estate's interest in Orlando Gateway conveyed all rights, title, and interest in Orlando Gateway—including Orlando Gateway's 86.378% interest in SEG—to BKGD.

11

On April 10, 2017, this Court dispensed with Counts 2, 3, and 4 of the Plaintiff's complaint by abstaining from determining them under 28 U.S.C. § 1334(c)(1). [AP Doc. 21].[17]

What remains of this adversary proceeding is Count I, the allegation of the Plaintiff, BKGD, that the Defendants' filing of the Declaratory Judgment Suit in Orange County, Florida on June 9, 2016, violated the automatic stay. Following a status conference, the Court authorized further briefing on the motion to dismiss Count I and the filing of a motion to retroactively annul the automatic stay by the Defendants.

## II. The Parties' Positions

### A. The Defendants' Amended Motion to Dismiss

The Defendants contend Count I (the stay violation) should be dismissed for three reasons. First, they contend that when the Debtor received his discharge and the case was closed, the automatic stay terminated and that the later reopening of the case did not reinstate the automatic stay. As a result, the Defendants argue, the filing of the Declaratory Judgment Action did not violate the automatic stay because the stay did not exist.

---

[17] *BKGD, LLC v. Townsend, Good Gateway, LLC, and SEG Gateway, LLC (In re Smith)*, 2017 WL 1323461 (Bankr. N.D. Ga. April 10, 2017).

Second, the Defendants contend that even if the automatic stay existed, BKGD lacks standing to bring an action alleging a stay violation because it is not the debtor, trustee, or a creditor that the automatic stay is designed to protect.

Finally, the Defendants contend that even assuming the automatic stay had been in effect and that BKGD had standing to bring an action alleging its violation, it is collaterally estopped from doing so because the identical issues have been litigated and adjudicated in the Florida litigation.

BKGD counters that the automatic stay existed when the case was reopened. BKGD reasons that because the Debtor failed to list his interest in Orlando Gateway when he filed bankruptcy and because it was an asset that was neither administered nor abandoned, it remained property of the estate even after the closing of the estate and case.  Therefore, BKGD, contends, when the case was reopened the automatic stay was in place and remained in effect unless and until the Court ruled otherwise. The Defendants dispute the assertion that the existence of an interest in Orlando Gateway was unknown prior to the closing of the case in March 2013.

BKGD further argues that it has standing to assert a stay violation.  It argues that the breadth of the automatic stay and its purpose - to protect property of the estate and allow for an orderly distribution of assets - permits parties other than the debtor or a creditor to enforce it.  Further, BKGD asserts that when it acquired the Orlando Gateway asset from the Trustee, part of its purchase was the bundle of rights that the

Trustee held, including the Trustee's right to assert any and all actions arising from and in connection with willful violations of the automatic stay by the Defendants.

Finally, BKGD contends that the Florida litigation (including the conclusions in the Florida Court of Appeals December 16, 2016 order) does not preclude it from pursuing its claim against the Defendants for violation of the automatic stay because this Court has concurrent jurisdiction to determine whether a violation of the automatic stay occurred.

B. <u>The Motion to Annul the Automatic Stay</u>

The Defendants seek annulment of the automatic stay as to the Declaratory Judgment Suit. They contend that the filing of the Declaratory Judgment Suit was not an effort to assert control over property of the estate, but instead was to seek declaratory relief as to the ownership interest of SEG Gateway. Further, the Defendants argue that the Court itself had made clear that the parties were to litigate ownership interests in another forum.

The Defendants contend that, at best, the filing of the Declaratory Judgment Suit was a technical violation of the automatic stay because they believed no stay existed because of their belief that the membership interest of Orlando Gateway had been transferred to Good Gateway prepetition.

The Defendants further contend that annulment is warranted because BKGD (and its principal, Mr. Thakkar) cannot show harm. They have litigated the same issues in

14

Florida and the ownership interest is resolved.  Further, they argue, annulment will have no prejudicial impact on the debtor, the trustee, creditors, or the estate because there is nothing further to do in the case.

BKGD opposes the motion to annul the automatic stay.  BKGD characterizes the Defendants' conduct as "scorched earth," "unscrupulous," and essentially a manipulation of the court system designed to prevent BKGD and Mr. Thakkar from having a fair opportunity to contest the Orlando Gateway ownership interest.

Specifically, BKGD argues that the totality of circumstances warrants a conclusion that the Defendants violated the stay, not that the stay should be annulled. BKGD contends that the Defendants filed the Suit in an attempt to circumvent the authority of this Court and at a time that the Orlando Gateway interest was property of the estate and prior to its administration by the Chapter 7 Trustee.

BKGD posits that if the Defendants had sought relief from the automatic stay prior to the filing of the Declaratory Judgment Suit, this Court would not have granted it without requiring service of process on Orlando Gateway through the Trustee or BKGD, depending on when the lawsuit was filed.

### III.        The Court's Conclusions

After careful consideration, the Court concludes that it is unnecessary to decide whether the automatic stay was in place or whether BKGD has standing to prosecute a

stay violation because, even assuming both are true, the Court would have granted relief from the automatic stay in 2016 and now does so retroactively.

The Eleventh Circuit has ruled that transactions in violation of the automatic stay of 11 U.S.C. § 362(a) are void, but may be validated through annulment of the stay pursuant to § 362(d). *Albany Partners, Ltd. V. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 675 (11th Cir. 1984); *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982).  The Eleventh Circuit has not explicitly stated the test to be applied, though it has observed that annulment of the stay should be done in "appropriately limited circumstances," bearing in mind that "the important congressional policy behind the automatic stay demands that courts be especially hesitant to validate acts committed during the pendency of the stay." *Albany Partners*, 749 F.2d 675.

Courts differ on the standard for determining whether the stay should be annulled. Some courts have held that a movant must demonstrate extreme or exceptional circumstances to warrant the extraordinary relief of retroactive annulment of the stay. *In re Soares*, 107 F.3d 969 (1st Cir. 1997). Observing that each bankruptcy case is unique and that it is, therefore, difficult to craft a uniform standard, the court noted that certain instances, such as where a creditor violates the stay without knowledge of the pending bankruptcy, or where the debtor has acted in bad faith, are possible grounds for retroactive relief. Nevertheless, the *Soares* court observed that these examples "illustrate that a rarely dispensed remedy like

16

retroactive relief from the automatic stay must rest on a set of facts that is both unusual and unusually compelling." *Id*.

Other courts have applied a "balancing of the equities" test to determine whether such relief is appropriate. *In re Myers*, 491 F.3d 120 (3d Cir. 2007); In re *National Environmental Waste Corp.*, 129 F.3d 1052 (9th Cir. 1997). These courts also recognize that the creditor's awareness of the bankruptcy filing or the debtor's unreasonable or inequitable conduct are considerations for annulling the stay. *National Environmental Waste*, 129 F.3d at 1055. They do not, however, consider the factors "dispositive" and instead "balance[ ] the equities in order to determine whether retroactive annulment is justified." *Id*. Other relevant considerations include whether there is equity in the property; whether the property is necessary for an effective reorganization; whether the court would have granted relief from the stay if a motion for relief had been timely filed prior to the stay violation; whether failure to grant retroactive relief will cause unnecessary expense to the creditor; or whether the creditor has detrimentally changed its position on the basis of its action. *In re Anderson*, 341 B.R. 365, 369–370 (Bankr. D. D.C. 2006) (citations omitted).

The problem, of course, with both tests is that they focus on the conduct of a debtor and a creditor.  Here, the debtor is not a party and neither is the trustee. In fact, neither one has the least bit of interest in the outcome of these motions.

This Court faced a similar conundrum in *In re Howard*, 391 B.R. 511 (Bankr. N.D. Ga. 2008).

In *Howard*, a secured lender sough to reopen a bankruptcy case in order to have a tax sale declared void in violation of the automatic stay and the tax sale purchaser (a non-party) sought to have the automatic stay annulled.  The debtor's conduct was irrelevant to the parties' competing interests.  The Court noted that the traditional tests of whether to annul the stay focus on the debtor's inequitable or unreasonable conduct because the debtor typically is the party seeking the benefit of the automatic stay.  But in *Howard*, as here, the debtor is not a part of the equation.

Nevertheless, the Court concluded that because the "extreme circumstances" test and the "balancing of the equities" test consider the conduct of the *competing parties* (and under the facts of most cases, the competing parties are debtor and creditor), it should focus not on the labels of debtor and creditor, but on the conduct of the parties relevant to the motion to annul the stay.

The Court concludes that, applying either the "extreme circumstances" test or the "balancing of the equities" test, the facts here are "unusual and unusually compelling" and they warrant retroactive annulment of the automatic stay.

This Court has consistently and unequivocally stated that it did not intend to determine the ownership interests and rights with regard to Orlando Gateway. Specifically, at the April 26, 2016, hearing, the Court informed the parties that it

expected them to litigate ownership of Orlando Gateway elsewhere.[18] Every aspect of the sale process in this Court is consistent with this intention.

In April 2016 Good Gateway and SEG Gateway argued that the Court had to first determine the estate's ownership in Orlando Gateway before approving a sale. The Court rejected these arguments. Instead, the Court approved bidding procedures over their objections and scheduled a hearing on the sale motion for April 26, 2016.

At the April 26 hearing (by this time, the proposed sale was an "as is, where is" with a quitclaim bill of sale with no express or implied warranties or representations), the Court made it clear that: (1) it did not think it had to determine ownership interests before approving a quitclaim bill of sale; (2) even assuming the estate had no interest because the debtor had transferred it prepetition, the Court would approve a quitclaim bill of sale from the trustee to a third party; and (3) post-sale, the Court expected the parties to litigate ownership elsewhere. The Sale Order entered June 22, 2016 commemorated this by providing, "The Court makes no findings of fact or conclusions of law as to the extent of the Bankruptcy Estate's/Debtor's interest in the Property. All claims and defenses as to the actual ownership of the Property are hereby preserved for subsequent adjudication." [Doc. 147].

---

[18] *See supra*, note 5. Transcript of April 26, 2016, Hearing (Exhibit C to Motion for Judicial Notice [AP Doc. 9].

The timing of the filing of the Declaratory Judgment Suit on June 9, 2016 (after the Court stated it expected adjudication of interests elsewhere, but before the sale hearing was held), may have served to complicate matters, but it was not inconsistent with this Court's statements.  And it must be emphasized that, on July 12, 2016, BKGD and Mr. Thakkar removed the Declaratory Judgment Suit to the Bankruptcy Court for the Middle District of Florida as an adversary proceeding related to two pending chapter 7 cases.  Thus, BKGD, whether it was happy about it or not, participated in the Florida litigation on July 12 , 2016, a date that falls after the time this Court entered its order authorizing the sale of the estate's interest in Orlando Gateway but before the sale closed on July 18, 2016.  If BKGD thought this Court should determine whether the Declaratory Judgment Suit violated the automatic stay, it could have sought relief here instead of asserting that position in the lawsuit.

The most prominent and relevant reason the Court expected the parties to litigate the ownership issues elsewhere was that the result literally can have no impact on the estate. No further funds will be available for creditors regardless of the outcome. Further, deciding such issues can only potentially increase the estate's costs and will certainly tax this Court's resources. Once the trustee sold what she could sell ("the Brooklyn Bridge" analogy comes to mind),[19] the debtor, the trustee, and the bankruptcy estate as a whole had absolutely no interest in the litigation over the

---

[19] *See, e.g.*, Transcript of April 26, 2016, Hearing (Exhibit C to Motion for Judicial Notice [AP Doc. 9] ) at 28:17–21 ("But I think the trustee, if somebody wants to give the estate $100,000 for a quit claim deed to the Brooklyn Bridge, then God bless the trustee's negotiating power. The creditors get the $100,000.").

ownership interest(s) of Orlando Gateway. As this Court noted in its April 10, 2017 Order, this proceeding involves exclusively non-debtor parties and its outcome will have no effect on the administration of the debtor's estate. This Court has no business meddling in a dispute with a long history of litigation elsewhere.

The ownership interest of Orlando Gateway has now been litigated and determined in the Florida courts.   The parties have pursued two (if not more) courses of action contemporaneously and this Court declines to entertain a collateral attack on the judgment of the Florida courts when this Court made clear that it had no intention of resolving the ownership interests to begin with. The Court specifically rejects BKGD's argument that the Court would have dictated the manner of service of process in nonbankruptcy litigation in another court.   And, in any event, the Florida Courts have resolved that matter.

In short, the ownership interest of Orlando Gateway was and remains of no import to the bankruptcy case and, in particular, to its sale.   The Court's Order and commentary from the bench contemplated adjudication of interests post-sale and in another forum.   If any party had moved for relief from the automatic stay to permit litigation to commence prior to or during the sale process, the Court obviously would have granted it as soon as possible.   The circumstances of this case are "unusual and unusually compelling." They warrant retroactive annulment of the automatic stay.

Based on the foregoing, the Court concludes that, under the totality of circumstances, it is appropriate to retroactively annul the automatic stay. Accordingly, it is

ORDERED that the motion to annul the automatic stay [AP Doc. 42] is granted.  It is

FURTHER ORDERED that, based on the annulment of the stay, the amended motion to dismiss [AP Doc. 43] is granted.

**END OF ORDER**

**NOT INTENDED FOR PUBLICATION**

**<u>Distribution List</u>**

M. Denise Dotson
M. Denise Dotson, LLC
P.O. Box 435
Avondale Estates, GA 30003

John Alan Moffa
Moffa & Breuer, PLLC
1776 N Pine Island Rd #102
Plantation, FL 33322

Jonathan P. Hoffman
Balch & Bingham, LLP
1901 6TH Avenue N.
#1500
Birmingham, AL 35203

Walter E. Jones
Balch & Bingham, LLP
Suite 700
30 Ivan Allen Jr. Blvd, NW
Atlanta, GA 30308

Jeremy L. Retherford
Balch & Bingham LLP
1901 6th Avenue N., #1500
Birmingham, AL 35203